IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LONGPOINT CONDOMINIUM
ASSOCIATION,

      Plaintiff,

v.                                       CASE NO. 5:05cv45-RH/WCS

ALLSTATE INSURANCE COMPANY,

      Defendant.

_____/

### ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT

This is a first-party insurer bad faith action. The insurer has moved to dismiss or for summary judgment on the ground that it cured any violation within the 60-day statutory cure period. I grant the motion.

### Background

On October 4, 1995, Hurricane Opal caused damage to a condominium project's common areas owned by plaintiff Longpoint Condominium Association. The damage was covered by a business insurance policy issued to Longpoint by defendant Allstate Insurance Company. On December 31, 1998, Longpoint

submitted to Allstate a sworn proof of loss in the amount of $538,564.01.  Allstate investigated—though Longpoint says inadequately and in bad faith—and refused to pay the claimed amount.

The policy provided that, in the event of a disagreement concerning the amount of a loss, either party could require that the amount be determined through an appraisal proceeding.  Longpoint invoked its right to an appraisal.  An appraisal proceeding was conducted on December 5 and 6, 2000.  On January 30, 2001, the umpire determined the amount of Longpoint's loss to be $100,249.68, less than one-fifth of Longpoint's original demand.

Under the policy, Allstate was required to pay the amount of a loss determined through appraisal within 60 days.  Allstate paid Longpoint the umpire-determined loss of $100,249.68 on February 22, 2001.  This was 23 days after entry of the umpire's award and 37 days before the deadline established by the policy.

In the meantime, on December 15, 2000, Longpoint filed with the Florida Department of Insurance a notice accusing Allstate of bad faith.  The gist of Longpoint's allegation was that Allstate had failed from the outset to conduct an adequate investigation of the loss and, therefore, to pay the amount due.  This record does not conclusively indicate whether Allstate's initial investigation was

adequate. It is clear, however, that Allstate had conducted a full and adequate investigation before the bad faith notice was filed; indeed, by that time Allstate had presented its case to the umpire as part of the formal appraisal process and was awaiting the umpire's decision.

## Analysis

Under the common law of Florida, an insured had no cause of action against its own insurer for bad faith.[1] Longpoint apparently acknowledges this; it has asserted no common law claim.

The Florida legislature changed the common law by adopting §624.155, *Florida Statutes*, which, among other things, created a first-party bad faith action. But the statutory action came with restrictions. As a condition precedent to such an action, the insured must file a notice with the Florida Department of Insurance specifically identifying the insurer's alleged bad faith. The insurer then has a 60-

---

[1] Bad faith actions against an insurer arising from the insurer's handling of its own insured's losses must be distinguished for these purposes from claims arising from a third party's losses that are submitted under the insured's liability coverage. The former are referred to as "first-party" bad faith claims, the latter as "third-party" claims. Cases noting that no cause of action for first-party bad faith exists under the common law of Florida include *Talat Enterprises, Inc. v. Aetna Casualty & Surety Co.*, 753 So. 2d 1278, 1281 (Fla. 2000); *Time Insurance Co. v. Burger*, 712 So. 2d 389, 392-93 (Fla. 1998); and *Greene v. Well Care HMO, Inc.*, 778 So. 2d 1037, 1042 (Fla. 4th DCA 2001).

day period within which to cure the violation.  The statute provides:

> No action shall lie if, within 60 days after filing notice, the damages are paid *or the circumstances giving rise to the violation are corrected*.

§624.155(3)(d), Fla. Stat. (2003) (emphasis added).

In the case at bar, the parties apparently agree that the 60-day period expired on February 16, 2001.[2]  By that time, Allstate had made a full and adequate investigation.  Longpoint apparently does not assert the contrary and, indeed, could not reasonably do so.  Allstate had, by that time, presented its case at the appraisal

---

[2] The Department of Insurance deemed Longpoint's notice "acceptable" as of December 18, 2005.  The parties assume in their papers that the 60-day period began to run on that date, thus making the deadline February 16, 2001.  I accept their position.  But for the parties' agreement, the precise date on which the 60-day period began to run could perhaps be deemed the date on which the notice was filed with the Department, the date on which it was deemed acceptable by the Department, or the date on which the notice was received by the insurer.  The statute and Florida courts interpreting it have described the critical date inconsistently, but the issue apparently has never made a difference in the outcome of any litigated case.  *Compare, e.g.*, Fla. Stat. §624.155(3)(a) (stating that "the department *and the authorized insurer must have been given 60 days' written notice* of the violation") (emphasis added); *Galante v. USAA Cas. Ins. Co.*, 895 So. 2d 1189, 1191 (Fla. 4th DCA 2005) (finding cure where insurer paid amount due within 60 days after receiving notice); *and Franklin v. Minn. Mut. Life Ins. Co.*, 97 F. Supp. 2d 1324 (S.D. Fla. 2000) (same); *with* Fla. Stat. §624.155(3)(d) (stating, "No action shall lie if, *within 60 days after filing notice*," the violation is cured) (emphasis added); *Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1280 (Fla. 2000) (calculating 60-day cure period "after notice is filed"); *and Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000) (calculating cure period from the date notice "was sent").

proceeding and proved, as it turns out, that Longpoint's claim was grossly excessive. By making a full and adequate investigation before the end of the 60-day period, Allstate corrected "the circumstances giving rise to the violation," thus meaning, in the words of the statute, that "[n]o action shall lie."

To be sure, Allstate had not actually *paid* the claim by the end of the 60-day period. Allstate paid the claim a few days later. But that does not help Longpoint. Allstate's bad faith, if any, was the failure to perform an adequate investigation, not the failure to pay Longpoint's $538,564.01 claim. To cure a failure-to-investigate violation, an insurer must investigate; it is neither sufficient, nor necessary, for the insurer to make payment. Allstate investigated, and it did so long prior to the end of the 60-day period, thus curing any failure-to-investigate violation. This precludes recovery in this action.

If, however, Longpoint's claim is characterized as including Allstate's failure to pay $538,564.01, the claim fails on its merits. The $538,564.01 claim, we now know, was grossly excessive, or, at least, so Allstate could have concluded in good faith. The umpire so held, and Allstate was under no obligation to take a view more favorable to Longpoint than that ultimately taken by the umpire. Under the policy, Allstate had every right to challenge the excessive claim.

If Longpoint's claim is characterized as including Allstate's failure to pay

the amount of Longpoint's actual loss, pegged by the umpire at $100,249.68, the claim again fails, for three reasons, each of which would be sufficient standing alone to defeat the claim. First, Longpoint made no assertion in its notice that Allstate acted in bad faith by failing to pay this amount (or any amount remotely comparable); Longpoint thus failed to afford Allstate an opportunity to make a payment in this amount and cure any violation.[3] Second, Longpoint gave no indication when it made its claim, and still has not proven nor even asserted, that it would have accepted such a payment; it can hardly be characterized as actionable bad faith for an insurer to fail to tender an amount the insured would not have accepted in any event. And third, the damages Longpoint now seeks to recover—primarily costs of investigating and going forward with the appraisal—have nothing to do with failure to pay $100,249.68 within 60 days after the bad faith notice was filed; Longpoint's alleged damages flow, instead, from

---

[3] The statutorily-required notice must be made with sufficient specificity to allow the insurer to understand and, if it chooses, to cure the violation. *See, e.g.*, Fla. Stat. §624.155(3) (setting forth specific requirements of notice); *see also Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1281-82 (Fla. 2000) (emphasizing that insurer may cure violation within 60-day period and, by doing so, may "avoid a civil action"). Here, Longpoint's notice was sufficient to apprise Allstate of the assertion that it had inadequately investigated the claim and failed to pay the $538,564.01 demand, but the notice gave not a hint of any assertion that Allstate had acted in bad faith by failing to pay $100,249.68 (less than one-fifth of the amount of the demand). Allstate thus was given no opportunity to cure any such alleged violation, and there is no way of knowing now whether Allstate would have done so had the opportunity been provided.

Allstate's failure to investigate and to pay Longpoint's $538,564.01 claim. As set forth above, Allstate's failure to investigate and to pay the $538,564.01 claim provides no basis for recovery in this action.[4]

One further point deserves mention. Longpoint complains that Allstate may have violated §624.155(3)(d), *Florida Statutes*, by failing to respond to the Department of Insurance within 60 days after the filing of Longpoint's bad faith notice. The failure to respond, Longpoint says, creates a presumption of bad faith. *See, e.g.*, *Imhof v. Nationwide Mut. Ins. Co.*, 643 So. 2d 617, 619 (Fla. 1994) ("An insurer's failure to respond within the sixty-day period will create a presumption of bad faith sufficient to shift the burden to the insurer to show why it did not respond."). But this assertion does not help Longpoint, for two reasons. First, the record includes a letter that Allstate wrote to the Department of Insurance responding to the claim on February 14, 2001, two days before the deadline. The record confirms that the Department received the letter. Allstate thus did not fail to

---

[4] This does not mean, of course, that an insured can never recover for its insurer's bad faith in failing to investigate promptly and pay the amount due under a policy. Longpoint could have filed a bad faith notice at any time, thus obligating Allstate to cure any bad faith within 60 days. In fact, however, Longpoint waited more than three years after the hurricane before submitting a sworn proof of loss and waited nearly two more years before filing a bad faith notice. By that time, any bad faith in failing to investigate was cured. And Longpoint never made a demand for payment of the actual amount due (rather than a grossly inflated amount). What an insured may *not* do is recover for bad faith without giving the insurer the statutorily-required 60-days notice and opportunity to cure.

*Case No: 5:05cv45-RH/WCS*

respond.[5]  Second, even if Allstate had failed to respond, this would create only a rebuttable presumption of bad faith.  Here, for the reasons set forth above, Allstate has rebutted any such presumption.  This case properly turns not on the timeliness of Allstate's response to the Department of Insurance, but on whether Allstate cured within the statutory 60-day period any bad faith alleged in Longpoint's notice with specificity.  The answer is that Allstate did timely cure any such violation.

## Conclusion

Longpoint sustained hurricane damage and demanded that Allstate pay more than five times Longpoint's actual loss as ultimately determined through the appraisal process conducted in accordance with the governing insurance policy.  Allstate declined to pay the inflated claim but did pay the appropriate amount promptly after the umpire rendered his decision.  In the meantime, Longpoint had

---

[5] It is true, as Longpoint asserts, that the record does not establish whether the letter was *received* by the Department *by the deadline*.  Depending on the vagaries of the postal service, the Department may have received the letter on the deadline, or on the day before the deadline, or within a few days thereafter.  Even assuming that the presumption of bad faith would arise if an insurer mailed, but the Department did not timely receive, a response to a bad faith notice, the presumption still would not arise here, because the burden of proving failure timely to respond is on Longpoint as the party seeking to invoke the presumption, and Longpoint has not carried that burden.

*Case No: 5:05cv45-RH/WCS*

filed a notice of bad faith, but Allstate cured any alleged violation within the statutory 60-day cure period, thus barring any recovery by Longpoint for bad faith. Accordingly,

    IT IS ORDERED:

    Defendant's motion to dismiss or for summary judgment (document 4) is GRANTED.  The clerk shall enter judgment stating, "This action is dismissed with prejudice."  The clerk shall close the file.

    SO ORDERED this 1st day of June, 2005.

                                    s/Robert L. Hinkle
                                    Chief United States District Judge